38638/01245/MHW/JFM

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

HERBERT DIGGS,

                Plaintiff,

v.

PARTHASARATHI GHOSH, et al.,

                Defendants.

Case Number  1:14 cv 03563

Judge John W. Darrah

Magistrate Judge Daniel G. Martin

## DR. GHOSH, DR. CARTER, AND DR. OBAISI'S MEMORANDUM OF LAW IN SUPPORT OF THEIR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, PARTHASARATHI GHOSH, M.D., IMHOTEP CARTER, M.D., and SALEH OBAISI, M.D., by and through their attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of Their Fed R. Civ. P 56 Motion for Summary Judgment, state as follows:

### I.  INTRODUCTION

Plaintiff, HERBET DIGGS, an inmate, currently serving a sentence for two counts of predatory criminal sexual assault, filed a complaint against three of his former doctors, Dr. Ghosh, Dr. Carter, and Dr. Obaisi (collectively, the "Doctors"), and a former warden claiming civil rights violations related to, *inter alia,* a failure to surgically reconstruct his chronic torn anterior cruciate ligament ("ACL").  See Defendants Dr. Ghosh, Dr. Carter, and Dr. Obaisi's 56.1 Statement of Undisputed Facts ("SOF") at ¶ 3, 10-14.  However, two independent orthopedic surgeons have evaluated the Plaintiff and did not recommend ACL surgery; the September, 2015 consultation finding that the Plaintiff is "not an ideal candidate for ACL reconstruction".  (SOF at ¶¶ 75-76).  Rather than a claim of deliberate indifference, this lawsuit is merely an inmate's attempt to dictate and demand specific medical treatment that is not medically indicated.

The uncontroverted material facts establish that following an altercation with his cell mate, the Plaintiff sustained a tear of his right ACL. (SOF at ¶ 40, 46). Despite the Plaintiff's testimony that the Doctors lacked any treatment plan for his ACL, the undisputed facts show that the Doctors regularly prescribed the Plaintiff with pain medicine, crutches, low bunk permits, low gallery permits, no stairs permits, special shoe permits, special handcuffing permits, and elastic knee sleeves, in addition to regularly scheduled consultations with independent orthopedic surgeons, and two rounds of physical therapy. (SOF at ¶ 27, 42, 44, 45, 49, 52, 56, 57, 62, 69-72). Undisputed medical testimony finds that the Doctors complied with all applicable standards of medical care in treating the Plaintiff's chronic ACL tear. (SOF at ¶ 38).

The Plaintiff alleges deliberate indifference against the Doctors for alleged delays in scheduling treatment, even though the Doctors have no role in scheduling treatment for inmates. (SOF at ¶ 21). Finally, the Plaintiff alleges that the Doctors' intentionally inflicted emotional distress on the Plaintiff, even though each Doctor testified that he never intended to cause the Plaintiff harm, and only desired the best medical outcome for the Plaintiff. (SOF at ¶¶ 32-33).

Based on the foregoing facts, the evidentiary record establishes that the Doctors' conduct did not rise to the level of deliberate indifference. Construing all uncontroverted material facts in the light most favorable to the Plaintiff, his claim for deliberate indifference fails as a matter of law. Accordingly, this Honorable Court should enter an Order granting Summary Judgment in favor of the Doctors and against the Plaintiff.

## II. MATERIAL FACTS

The Doctors incorporate their Statement of Undisputed Facts Pursuant to Local Rule 56.1(a), and accompanying exhibits, filed concurrently with the Doctors' Motion for Summary Judgment and supporting Memorandum of Law.

## III. ARGUMENT

**A.  Venue and Jurisdiction are proper**

The Doctors have consented to this Court's jurisdiction and venue by admission in their Answers to the First Amended Complaint.  (Docs. # 42, 43, 48 at ¶¶ 1-2).

**B.  Summary Judgment is proper in this matter**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997).

**C.  The Statute of Limitations Bars Plaintiff's Claims Against Dr. Ghosh and Dr. Carter**

The Plaintiff's deliberate indifference and intentional infliction of emotional distress claims against Dr. Ghosh and Dr. Carter are barred by the Statute of Limitations.  Claims for deliberate indifference made pursuant to 42 U.S.C. § 1983 are considered personal injury claims and are governed by Illinois' personal injury statute of limitations and tolling laws.  See *Delgado-Brunent v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996).  Claims for intentional infliction of emotional distress are also governed by Illinois' personal injury statute of limitations.  *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278, 798 N.E.2d 75, 85 (Ill. 2003).  Illinois has a two-year statute of

limitations for personal injury actions. 735 Ill. Comp. Stat. Ann. 5/13-202 (2008). *Anton v. Lehpamer*, 787 F.2d 1141, 1142 (7th Cir. 1986).

Although state law determines the length of the statute of limitations, federal law determines when the statute of limitations begins to accrue. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991). In cases alleging continuous denial of medical treatment, the statute of limitations accrues, "when a person resigns or retires from his public employment, the claim accrues on that date." *Heard v. Elyea*, 525 Fed. Appx. 510, 511 (7th Cir. 2013); see also *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). Thus a prisoner has, "two years from the date a state actor departs to pursue any legal claims that they may have." *Elyea*, 525 Fed. Appx. at 512.

Dr. Ghosh's last day as Stateville's Medical Director was March 31, 2011. (SOF at ¶ 4). Dr. Carter's last day as Stateville's Medical Director was May 13, 2012. (SOF at ¶ 5). The Plaintiff filed his original complaint in this lawsuit on May 14, 2014 - more than two (2) years after Dr. Ghosh and Dr. Carter, respectively, departed from their positions as Medical Director. (Doc. # 1). Therefore, the statute of limitations bars the Plaintiff's deliberate indifference and intentional infliction of emotional distress claims against Dr. Carter and Dr. Ghosh.

## D. Plaintiff Has Not Established the Elements of Deliberate Indifference

### 1. *Plaintiff must establish all three elements of deliberate indifference to prevail*

The uncontroverted factual record establishes that Plaintiff has unequivocally failed to create any issue of material fact to defeat the Doctors' Motion for Summary Judgment. In order to prevail on a claim under § 1983, the Plaintiff must show that each Doctor acted with deliberate indifference to his serious medical need or condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The burden of proving deliberate indifference rests on the Plaintiff. *Id.*

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the plaintiff must establish that each of the Doctors actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless <u>purposely and deliberately withheld such treatment</u>. See *Sellers*, 41 F.3d at 1102 (emphasis added). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even tortious recklessness is not enough. *Id*. Unsuccessful medical treatment, neglect, nor medical malpractice is sufficient to support a claim for deliberate indifference. See *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

> 2. *The Plaintiff has not shown that Dr. Carter possessed subjective knowledge of an excessive risk to the Plaintiff's health*

The Plaintiff has failed to establish that Dr. Carter possessed the required subjective knowledge of a risk to the inmate's health and safety. Each defendant in a deliberate indifference claim must be subjectively aware of a serious medical need. *Estelle,* 429 U.S. at 107; *Sellers*, 41 F.3d at 1102; *Vance,* 97 F.3d at 991. In order to establish subjective knowledge, the Plaintiff must show that, "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an 'excessive risk to inmate health or safety'". *Vance*, 97 F.3d at 993, citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

First, it is undisputed that during Dr. Carter's only interaction with the Plaintiff, the Plaintiff gave no subjective report of pain, instability, need for surgery, or any problem with his knee, whatsoever. (SOF at ¶ 58). On March 23, 2012, Dr. Carter saw the Plaintiff for the only time during his tenure as Stateville's Medical Director. (SOF at ¶ 58). Dr. Carter evaluated the Plaintiff following his episode of supraventricular tachycardia ("SVT"), which is an abnormal heart rhythm that required emergency hospitalization. (SOF at ¶ 58). Plaintiff's counsel asked Dr. Carter whether the Plaintiff complained about his knee during this visit:

> Q:     …I'm assuming at-on this date, on this 23rd of March 2012, Mr. Diggs also complained of right knee pain or right knee injury?
>
> A:     No, that was not in his complaint… It was my custom to always record subjective complaints during the conversation; and if there was a particular complaint during the conversation, I always listed that in the subjective portion. (SOF at ¶ 58)

Dr. Carter saw the Plaintiff only one time and during that one visit, the Plaintiff made no mention of any subjective complaints of knee pain, instability, or need for surgery. (SOF at ¶ 58). Accordingly, Dr. Carter lacked the required subjective notice. Therefore, the Plaintiff's deliberate indifference claim against Dr. Carter fails as a matter of law, on this point alone.

> 3.     *The Doctors Did Not Display the Required Culpability Because Their Actions in Treating the Plaintiff Complied with the Applicable Standard of Care*

The Plaintiff's Deliberate Indifference Claim against the Doctors fails because the undisputed facts show that the Doctors complied with all applicable community standards of medical care in treating the Plaintiff. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for a claim of deliberate indifference based on a medical professional's care, the medical professional's decision

must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). An inmate is not entitled to demand specific care, nor the best care possible, but rather, he is entitled to reasonable measures to meet a substantial risk of serious harm to him. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (emphasis added).

The undisputed testimony establishes that the standard of care in treating a chronic torn ACL includes the entire range of treatment, from conservative management of the injury with physical therapy, ice, and anti-inflammatory medications, all the way through surgery, if surgery is clinically indicated. (SOF at ¶ 35). The Plaintiff is suing, *inter alia*, for ACL reconstruction surgery. However, all three Doctors stated that surgery is not required for every ACL tear. (SOF at ¶¶ 35-37). Moreover, Dr. Mejia, an independent orthopedic surgeon at UIC, was asked, directly, if the standard of care requires surgery for every ACL tear:

> Q: Is surgery always required for every ACL tear doctor?
>
> A: No. (SOF at ¶ 37).

In fact, at the request of the very Defendants in this case, the Plaintiff was sent offsite and evaluated by independent orthopedic surgeons in 2009, 2010, 2012, 2013, and 2015, and in each instance, the independent orthopedic surgeon did not enter a recommendation that the Plaintiff

receive ACL reconstruction surgery. (SOF at ¶ 47, 54, 63, 67, 75). Notably, the Plaintiff's most recent orthopedic consultation, in September 2015 actually, finds that the Plaintiff "**is not an ideal candidate for ACL reconstruction surgery**". (SOF at ¶ 75) (emphasis added).

The Plaintiff has, under oath, stated that he is suing because the Doctors do not have a treatment plan for his knee. (SOF at ¶ 10). However, not only have the Doctors employed a treatment plan, that treatment plan has fallen within the applicable community standards of medical care adduced during discovery. Since 2006, the Plaintiff admitted that he has received plenty of pain medication. (SOF at ¶ 27). He received two rounds of physical therapy (SOF at ¶ 54-55, 71-72). In addition to physical therapy, he was given special exercises, called quadriceps exercises that he could do in his cell. (SOF at ¶ 51). The Doctors also prescribed the Plaintiff with various medical permits to reduce his complaints of pain or instability in the knee. A low bunk permit is a request from the Medical Director to the IDOC to place the patient on the bottom bunk rather than the top bunk. (SOF at ¶42). A low gallery permit asks the IDOC to assign the inmate to a gallery on a lower cell house floor in order to prevent the inmate from having to climb stairs. (SOF at ¶ 45). A medical restraints permit asks the IDOC to no longer handcuff the inmate behind his back. (SOF at ¶ 45). A state boots/special shoes permit allows an inmate to wear non-standard shoes to alleviate complaints of chronic knee pain and mobility problems. (SOF at ¶ 52). A waist chain permit asks the IDOC to bind an inmate in a special manner to relieve knee pain symptoms and improve the inmate's handling of a crutch. (SOF at ¶ 59). The Doctors also approved permits for crutches and provided the Plaintiff with an elastic knee sleeve to improve his complaints of knee instability and reduce his complaints of pain. (SOF at ¶¶ 49, 44). This all complies with UIC orthopedic surgeon Dr. Mejia's testimony that he would recommend a chronic ACL tear patient receive physical therapy, ibuprofen, and crutches. (SOF at ¶ 47). This

also complies with Dreyer orthopedic surgeon Dr. Szuch's recommendation that the Plaintiff could benefit from a knee sleeve or knee brace (SOF at ¶ 77).

In order to infer the required culpability for a claim of deliberate indifference, the Doctors' decisions must be so far afield of accepted professional standards as to raise the inference that they were not actually based on a medical judgment at all. See *Forbes,* 112 F.3d at 267. The Doctors have rendered consistent treatment to the Plaintiff that all falls within the standard of care and recommendations of multiple medical professionals that treated the Plaintiff. Accordingly, the Plaintiff cannot succeed in his deliberate indifference claim against the Doctors. Therefore, Summary Judgment should be granted in favor of the Doctors.

    *4.    The Doctors lack any personal involvement in any alleged delayed treatment*

The Doctors are not liable under Section 1983 for the Plaintiff's allegations of delayed medical treatment because the Doctors lacked any personal involvement in scheduling his medical appointments. Liability under 42 U.S.C § 1983 requires direct and personal involvement in the situation that causes injury to an inmate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To be liable under Section 1983, the individual defendant must have caused or participated in a constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). Accordingly, to the degree that any delays in scheduling medical appointments or services caused the Plaintiff's injury, these Doctors are not liable under Section 1983 because the undisputed testimony confirmed that the Doctors have no role in scheduling outside orthopedic consultations or even internal medical appointments.

Here, all three Doctors testified, consistently, that in order to send an inmate for an off-site consultation of a non-emergent orthopedic injury, like the Plaintiff's injury, they must first secure approval from Wexford's Collegial Review process. (SOF at ¶ 20). All three Doctors testified,

consistently, that once an inmate is approved for an outside orthopedic consultation, the Medical Director has no role in scheduling the appointment date at the outside facility. (SOF at ¶ 21). Rather, the Doctors rely on other professionals to schedule the appointment. (SOF at ¶ 21). Outpatient medical appointments are scheduled between Wexford and the medical facility, or between the medical facility and the expert medical surgeon. (SOF at ¶ 50). During Collegial Review, a nurse is on the phone call listening and once approval is granted, the nurse electronically sends the name of the inmate to UIC's respective clinic and then UIC provides Stateville with the appointment date. (SOF at ¶ 21). Similarly, internally at Stateville, unless a medical technician or nurse schedules an inmate on the Medical Director's daily schedule; he will not see the inmate. (SOF at ¶ 26). For physical therapy, the undisputed testimony established that an independent contractor handles physical therapy and he sometimes handles his own schedule. (SOF at 17).

It is neither uncommon nor improper for the Medical Director at a facility as large as Stateville to rely on other individuals to perform tasks such as scheduling. As noted by the Seventh Circuit, "[b]ureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The Medical Director does not personally schedule inmates' medical appointments, internally or externally, and the Plaintiff cannot sue the Doctors for failing to do another employee's job. Therefore, this Court should grant summary judgment in favor of the Doctors.

5.    *The Plaintiff has not established a pattern of neglect*

The Plaintiff has failed to carry his burden of identifying a pattern of neglect by the Doctors in order to support his claim for constitutional deliberate indifference. The Seventh Circuit requires that when assessing whether the Plaintiff has satisfied the extremely high burden of proving

deliberate indifference, the totality of an inmate's medical care must be considered. See *Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999). A plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor. *Id.* A pattern of neglect must be evident in the record. See *Id.*; see also, e.g., *Guttierez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997) (holding that isolated incidents of neglect during an otherwise continuous stretch of adequate medical care is insufficient to support an inference of deliberate indifference and a court must examine the entire record, not just isolated events).

Here, the undisputed factual record shows that the Plaintiff secured consistent, adequate medical treatment from the time of his injury until present. Since 2006, the Plaintiff admitted that he has received plenty of pain medication; two rounds of physical therapy; was advised of special exercises called quadriceps exercises that he could do in his cell when not receiving physical therapy; received various medical permits to reduce his complaints of pain or instability in the knee including: low bunk, low gallery, medical restraints permit, state boots/special shoes, and waist chain; and that he received medical devices including crutches and an elastic knee sleeve designed to improve his subjective complaints of knee instability and reduce his complaints of pain. (SOF at ¶ 27, 44, 54-55, 51, 42, 45, 49). The Doctors requested and received permission from Wexford to send the Plaintiff out of the prison to independent orthopedic surgeons for consultation in 2009, 2010, 2012, 2013, and 2015. (SOF at ¶ 47, 54-55, 62-63, 67, 75). Moreover, the medical records establish that each of the Doctors personally treated the Plaintiff for other medical conditions during this time unrelated to his ACL, of which the Plaintiff makes no complaints. (SOF at ¶ 56, 58, 73).

After March of 2013, when UIC advised that it would not perform surgery on the Plaintiff, Dr. Obaisi confirmed that no other local community hospital would see a Stateville

inmate for an orthopedic consultation. (SOF at ¶ 68). As Medical Director, he can only send an inmate to an outside orthopedic consultation if Wexford approves the treatment at a Collegial Review. (SOF at ¶ 20). After UIC declined to perform surgery on the Plaintiff in March 2013, Dr. Obaisi presented the Plaintiff five (5) more times at collegial review to Wexford in order to get him another orthopedic follow up. (SOF at ¶ 67, 69-74). On June 6, 2014, Dr. Obaisi even appealed Wexford's prior denial of his recommendation and asked Wexford for assistance in finding an orthopedic surgeon who would treat inmates. (SOF at ¶ 71). In January 2015, Wexford actually asked Dr. Obaisi to stop presenting the Plaintiff "over and over" at Collegial Review. (SOF at ¶ 73). However, once Dreyer Orthopedic agreed to see inmates, Dr. Obaisi saw to it that the Plaintiff was one of the first inmates seen at this facility. (SOF at ¶ 74).

Instead of establishing a pattern of neglect, the undisputed record establishes that all three Doctors rendered consistent, adequate treatment to the Plaintiff - not unconscionable conduct and certainly not tantamount to cruel and unusual punishment. At best, Plaintiff's focus on scheduling delays or alleged ineffective medical treatment only constitutes a possible claim for medical malpractice against the Doctors. However, unsuccessful medical treatment, medical malpractice, or even neglect are not sufficient facts to establish the required culpability behind a claim for constitutional deliberate indifference. See *Varnado,* 920 F.2d at 321. The Doctors did not display the required culpability to support the Plaintiff's claim of constitutional deliberate indifference. Therefore, this Court should grant summary judgment in the Doctors' favor.

6. *No expert or verifying medical testimony established a causal connection between the Doctors' alleged deliberate indifference and Plaintiff's alleged damages*

The Plaintiff produced no medical testimony establishing his claims that the Doctors' inadequate or delayed medical treatment detrimentally caused him harm. Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical

treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. Appx. 625, 628 (7th Cir. 1999); see also *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (finding that a plaintiff must have such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately); *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) ("an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed").

Here, the Plaintiff's claims against the Doctors amount to delayed medical treatment and ineffective medical treatment. Testimony was secured from four medical doctors: Dr. Ghosh, Dr. Carter, Dr. Obaisi, and the UIC orthopedic surgeon, Dr. Mejia. There is no testimony from *any* physician that any alleged scheduling delays or ineffective medical treatment proximately caused the Plaintiff's claimed damages or injuries. Accordingly, the Plaintiff cannot prove that any alleged delayed treatment or ineffective treatment proximately caused his damages. Therefore, this Court should grant summary judgment in favor of the Doctors.

**E.     The Plaintiff's IIED claim fails because the Doctors' conduct was neither extreme nor outrageous**

The Plaintiff's claim for intentional infliction of emotional distress ("IIED") fails because the Doctors' conduct was neither extreme nor outrageous. There are three elements for an IIED claim: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must intend or know that there is a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *Feltmeir*, 207 Ill.2d at 269, 798 N.E.2d at 80. The Illinois Supreme Court has explained, "Conduct is of an extreme and outrageous character where 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"". *Doe v.*

*Calumet City*, 161 Ill.2d 374, 641 N.E.2d 498, 507 (Ill. 1994). In *Hardy v. Hardy*, a prisoner filed an IIED claim against Dr. Ghosh for alleged delayed treatment and delays in receiving medication. 2013 U.S. Dist. Lexis 134661, *3, 15-16 (N.D. Ill. 2013). In granting summary judgment in favor of Dr. Ghosh, the Court found - as a matter of law- that the physician's provision of taking *some* steps to alleviate a patient's ailments and treating the inmate in *some* capacity failed to elicit the "Outrageous!" response required to raise the conduct to the level of "extreme and outrageous" to support an IIED claim. *Id.* at *18 (emphasis in original).

Here, it is undisputed that all three Doctors treated the Plaintiff in *some* capacity and took *some* steps to alleviate the Plaintiff's pain and functional mobility ailments. (SOF at ¶ 27, 44, 54-55, 51, 42, 45, 49). No average member of the community would read the Plaintiff's medical chart and exclaim, "Outrageous!" Therefore, this Court should grant summary judgment in the Doctors' favor on the Plaintiff's IIED claims.

## F. The Plaintiff's claim for punitive damages fails

The Plaintiff claims punitive damages as a result of the Doctors' alleged deliberate indifference; however, he has not proven any set of facts that would allow him to recover punitive damages. (Doc. # 19 Relief (B)). Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011). A finding of deliberate indifference to a serious medical need, while establishing liability under § 1983, does not necessitate a finding of callous indifference warranting punitive damages. *Id.* at 924.

Even if there is a question of fact on the Plaintiff's ability to prove the necessary elements of his deliberate indifference claim against these Doctors, their actions certainly cannot be said to

warrant punitive damages. All three Doctors testified, unequivocally, that they never intended to cause the Plaintiff any harm, they only intended and desired to secure the best possible medical outcome for this Plaintiff and they complied with all applicable community medical standards of care for treating this inmate in a maximum security prison. (SOF at ¶ 32, 33, 38). Finally, the Plaintiff's damages all, allegedly, stem from a failure to order ACL reconstruction surgery, which two outside orthopedic surgeons did not approve for this Plaintiff. (SOF at ¶ 64, 75). The Doctors' conduct was not motivated any evil motive or intent. Therefore, even if this Court finds that there is a question of fact as to the Plaintiff's deliberate indifference claim, it should still find that the Plaintiff will be unable to recover punitive damages, and grant Summary Judgment to all three Doctors on this issue.

## IV. CONCLUSION

The Plaintiff has failed to produce any evidence sufficient to show that Dr. Ghosh, Dr. Carter, or Dr. Obaisi acted with deliberate indifference toward the Plaintiff's ACL. The level of proof required in a deliberate indifference claim is high and the Plaintiff's mere disagreement with the medical treatment recommended by all three Stateville Medical Directors, plus two outside orthopedic surgeons, fails to satisfy the Plaintiff's high burden in this lawsuit. At best, the Plaintiff may have alleged facts supporting a claim of medical malpractice, but medical malpractice is not a claim for deliberate indifference. Accordingly, Dr. Ghosh, Dr. Carter, and Dr. Obaisi are entitled to judgment, in their favor, as a matter of law.

WHEREFORE, Defendants, PARTHASARATHI GHOSH, M.D., IMHOTEP CARTER, M.D., and SALEH OBAISI, M.D., pray that this Honorable Court enter an Order granting Summary Judgment in their favor, dismissing the case with prejudice against them, and for any other relief deemed just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ James F. Maruna
    One of the Attorneys for Defendants,
    PARTHASARATHI GHOSH, M.D.,
    IMHOTEP CARTER, M.D., and SALEH
    OBAISI, M.D.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna /ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2015 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

8167290