UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERBERT DIGGS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 14-cv-3563 |
| PARTHASARATHI GHOSH, M.D.; IMHOTEP CARTER, M.D.; SALEH OBAISI, M.D.; MARCUS HARDY; and RANDY PFISTER, | ) ) Judge John W. Darrah ) ) ) ) |
| Defendants. | ) |

# **MEMORANDUM OPINION AND ORDER**

Plaintiff Herbert Diggs filed a Second Amended Complaint against Defendants Dr. Parthasarathi Ghosh, Dr. Imhotep Carter, Dr. Saleh Obaisi (collectively, "Defendant Doctors"), former warden Marcus Hardy, and current warden Randy Pfister, asserting various claims regarding the medical treatment Plaintiff received for a knee injury. On November 30, 2015, Defendants filed Motions for Summary Judgment. For the reasons set forth more fully below, Defendant Hardy's Motion for Summary Judgment [65] and Defendants Ghosh, Carter, and Obaisi's Motion for Summary Judgment [69] are granted.

## **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v.*

*Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. Local Rule 56.1(b)(3)(B). To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

If a responding party does not comply with Rule 56.1, "additional facts may be ignored, and the properly supported facts asserted in the moving party's submissions are deemed admitted." *Gbur v. City of Harvey, Illinois*, 585 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See Ammons*, 368 F.3d at 817.[1]

---

[1] Both sides point out non-compliance with Local Rule 56.1. Defendants' Statements of Fact often assert multiple facts per paragraph. Some of Plaintiff's responses are mere disagreement with the facts without reference to specific supporting material. "It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' . . . it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (citing *Anderson v. Liberty Lobby*, 477 U.S. 252, 248-49 (1986)).

# BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff Herbert Diggs is a forty-six-year-old inmate who is currently incarcerated at Stateville Correctional Center. (Dkt. 82, ¶ 3). Plaintiff entered custody on March 9, 2004. (*Id.*) The Health Care Unit at Stateville generally consists of one medical director, one staff physician, one physician's assistant, three psychiatrists, three to four dentists, four nurses, and two to three licensed practice nurses, as well as numerous medical technicians. (*Id.*, ¶ 16.) Stateville also employs an independent contractor to provide physical therapy to the inmates, who is generally on site two days per week. (*Id.*, ¶ 17.) Defendant Parthasarathi Ghosh served as the Medical Director at Stateville from 2003 until March 31, 2011. (*Id.*, ¶ 4.) Defendant Imhotep Carter was Stateville's Medical Director from July 25, 2011 to May 13, 2012. (*Id.*, ¶ 5.) Defendant Saleh Obaisi is Stateville's current Medical Director, and has held that position since August 2, 2012. (*Id.*, ¶ 7.)

On April 12, 2006, Plaintiff sustained an injury after a fight with his cell mate. (*Id.*, ¶ 40.) Plaintiff complained to a staff physician about chest pain, severe swelling in the right orbital, and right knee pain. (*Id.*) The treatment plan was an ophthalmology follow-up, a low bunk permit, an ace bandage, an x-ray, eye drops, and various medicines. (*Id.*) On July 10, 2006, Plaintiff's right knee was x-rayed, and the findings were negative. (*Id.*, ¶ 42.) On July 7, 2009, Ghosh examined the Plaintiff for complaints about right knee instability, ordered an MRI, and issued a "low bunk, low gallery" permit and medical restraints. (*Id.*, ¶ 45.) The MRI was conducted on August 13, 2009, and showed a tear of Plaintiff's right anterior cruciate ligament ("ACL"). (*Id.*, ¶ 46.) Ghosh ordered a low bunk and low gallery permit, one

3

crutch, a knee brace, and medical restraints from February 18, 2010 to January 31, 2011. (*Id.*, ¶ 52.)

Wexford Health Sources, Inc. is a Florida corporation that is under contract with the State of Illinois to provide medical care to inmates. (Dkt. 75, ¶ 4.) On September 29, 2009, Wexford approved Ghosh's request that Plaintiff be sent for an orthopedic follow-up. ((Dkt. 82, ¶ 47.) Alfonso Mejia is an orthopedic surgeon at the University of Illinois-Chicago Medical Center ("UIC") who examined and consulted on the Plaintiff's injury from 2009-2012. (*Id.*, ¶ 9.) Mejia first evaluated Plaintiff's right knee on October 1, 2009. (Dkt. 93, ¶ 27.) Mejia's Assessment/Plan stated: "We will have the patient come back to clinic in 4-6 weeks after extensive aggressive physical therapy for improved range of motion of the knee. If the patient does not improve, he will be considered for possible arthroscopic surgery versus further physical therapy. The patient needs to be made a better preoperative candidate for consideration for an ACL reconstruction." (IDOC 803.) On November 4, 2009, Wexford approved a request from Ghosh for knee arthroscopy surgery for a complete ACL tear. (Dkt. 82, ¶ 49.) On February 18, 2010, Ghosh saw Plaintiff and noted that surgery had not taken place. (*Id.*, ¶ 50.) Mejia next evaluated Plaintiff on July 15, 2010. (Dkt. 82, ¶ 54.) Plaintiff informed Mejia that he had received no physical therapy. (*Id.*) Mejia told Plaintiff he needed to increase his range of motion before being able to receive surgery. (*Id.*) Plaintiff received physical therapy from August 24, 2010 to October 2, 2010. (Dkt. 93, ¶ 9.)

On March 23, 2012, Carter saw the Plaintiff following an abnormal heart rhythm. (*Id.* ¶ 58.) Carter noted that Plaintiff walks with a limp and had a history of a knee injury. (Dkt. 93, ¶ 13.) Carter also reviewed all of Plaintiff's medical records. (*Id.*, ¶ 14.) Carter renewed

4

Plaintiff's existing medical permits for "low bunk, low gallery," waist chain, state boots, and a knee brace. (Dkt. 82, ¶59.)

Mejia evaluated Plaintiff a third time on December 13, 2012. (*Id.*, ¶ 62.) Plaintiff reported that he had obtained therapy and complained of right knee pain and instability. (*Id.*) Plaintiff "was interested in surgical intervention to see if he is a good candidate for an ACL reconstruction." (IDOC 830). Plaintiff was referred by Mejia to a clinic. (*Id.*) On March 25, 2013, Plaintiff was seen by Dr. Chmell at UIC. (*Id.*, ¶ 66.) Plaintiff was informed that there was no physician at UIC that performed ACL reconstruction on inmates and recommended physical therapy and follow-up with a different hospital where a physician was able to do ACL reconstruction on inmates. (Dkt. 83-1, p. 16.) Obaisi saw the Plaintiff on November 13, 2013, and noted a chronic ACL tear, a plan to check with UIC, and prescribed Motrin. (Dkt. 82, ¶ 70.) On February 27, 2014, Plaintiff reported continued knee pain; and Obaisi advised that he would present Plaintiff for collegial review with Wexford. Obaisi authorized a second round of physical therapy for the Plaintiff on June 4, 2014. (Dkt. 93, ¶ 19.)

On November 14, 2104, Obaisi wrote that Plaintiff's knee was not improving and referred the case to Wexford's collegial review for discussion. (Dkt. 82, ¶ 72.) On January 5, 2015, Obaisi made a note in Plaintiff's medical file that, during Wexford's collegial review, a Dr. Ritz recommended complying with UIC's recommendation for no surgery due to the good condition of Plaintiff's other knee joint components. (*Id.*, ¶ 73; IDOC 1693.) Ritz also recommended that there was no need to present the case at multiple collegial reviews, as no local orthopedist would consider surgery. (*Id.*) On July 19, 2015, Obaisi submitted a request for a referral for Plaintiff to a medical clinic for an orthopedic follow-up. (*Id.*, ¶ 74.) Plaintiff was examined by Dr. Neena Szuch at Dreyer Medical Clinic on September 9, 2015. (*Id.*, ¶ 75.)

5

Szuch's report stated that Plaintiff "is not an ideal candidate for ACL Reconstruction." (*Id.*; Dtk. 70-10, p. 4.)

Marcus Hardy is currently the Deputy Director of the Central District for the Illinois Department of Corrections ("IDOC"). (Dkt. 80, ¶ 1.) Hardy was the warden of Stateville Correctional Center from December 2009 to December 2012. (*Id.*, ¶ 2.) Hardy had general oversight of Stateville's healthcare unit, but deferred to the medical professionals. (*Id.*, 43.) During the time that Hardy was the warden of Stateville, Plaintiff was seen in the healthcare unit for his knee injury at least seventeen times. (*Id.*, ¶ 8.) Plaintiff alleges that Hardy was aware of Plaintiff's medical condition due to conversations between the two and Hardy referred Plaintiff to the health care unit. (*Id.*, ¶ 18.) Hardy does not recall having any conversations with Plaintiff regarding his injury or seeing Plaintiff use crutches. (*Id.*, ¶¶ 20-21.) Plaintiff filed a grievance, which was marked as an emergency, dated May 21, 2012, regarding his "low-bunk, low-gallery" permit and requesting surgery for his knee. (*Id.*, ¶¶ 30-31.) Plaintiff is unsure if Hardy saw the grievance. (*Id.*, ¶ 32.) Hardy did not see Plaintiff's grievance before this litigation. (*Id.*, ¶ 39.)[2] Plaintiff received a response, dated February 27, 2013, from a grievance officer which generally stated that Plaintiff had a "low-bunk, low-gallery" permit, a crutch, a knee brace, and stating that there were no medical notes concerning surgery. (*Id.*, ¶ 35.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most

---

[2] Plaintiff disputes this fact but offers no citation to the record. *See* Local Rule 56.1(b)(3)(B) (any disagreement must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon").

6

favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015).

## ANALYSIS

*Counts I-III*

In Counts I-III, Plaintiff alleges that Ghosh, Carter, and Obaisi were deliberately indifferent to his health by failing to properly treat his ACL injury. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)). Plaintiff must satisfy two elements to prove a deliberate indifference claim: one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). For the objective element, Plaintiff must show that he had an objectively serious medical need. *Id.* "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating

7

treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). For the subjective element, Plaintiff must show that Defendants "were aware of his serious medical need and were deliberately indifferent to it." *McGee*, 721 F.3d at 480.

Deliberate indifference requires more than negligence or even malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Roe*, 631 F.3d at 857; *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). Simple disagreement with a doctor's medical judgment is not enough to prove deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Pyles*, 771 F.3d at 409 (internal citations and quotations omitted).

Ghosh and Carter argue the claims against them are barred by the statute of limitations. Federal courts adopt the forum state's statute of limitations for personal injury claims and also borrow the state's tolling rules. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). In Illinois, the limitations period applicable to all § 1983 claims is two years. *Woods v. Illinois Dep't of Children & Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013). In this case, the claims alleging refusal of treatment accrued "when a person resigns or retires from his public employment. *Heard v. Elyea*, 525 F. App'x 510, 511 (7th Cir. 2013) (citing *Heard v. Sheahan*,

253 F.3d 316, 318 (7th Cir. 2001) ("refusal continued for as long as the defendants had the power to do something about his condition")). However, the statute of limitations was tolled while Plaintiff pursued administrative remedies. *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001) ("a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process."). Ghosh's last day as Medical Director was March 31, 2011; and Carter's last day as Medical Director was May 13, 2012. Plaintiff filed a grievance on May 21, 2012, which was finally resolved on January 2, 2014. The current lawsuit was filed on May 14, 2014. Since the statute of limitations was tolled during the grievance process, the 1983 claims against Ghosh and Carter are not barred.

Defendant Doctors also argue they provided Plaintiff with reasonable medical care for his injury. The record does not show that any physician indisputably recommended ACL surgery, and it is undisputed that Defendants did provide treatment options such as pain medication, some physical therapy, and various permits regarding physical activity to reduce strain on the knee. Mejia testified that his recommendation was that Plaintiff be reevaluated for the surgery after physical therapy. (Dkt. 70-9, p. 29:3-11.) Mejia also testified that treatment for a torn ACL depends on the functional needs of the patient and that it can be treated with therapy and a brace. (*Id.* at p. 11:13-17.) In 2009, Ghosh found that Plaintiff had a 5-130 degree range of motion in his right knee which was "pretty good." (Dkt. 82, ¶ 46.) Mejia found that Plaintiff's range of motion was 0-125 degrees on December 13, 2012, after receiving physical therapy. (*Id.*, ¶ 62.) Mejia described that range as "excellent." (*Id.* at p. 17:21-22.)

At that time, there was no physician available at UIC that performed ACL surgeries on inmates. Once a physician willing to perform the surgery was found, Obaisi submitted a request

9

for a referral for Plaintiff to a medical clinic for an orthopedic follow-up. Plaintiff was examined by Szuch, who found that Plaintiff is not an ideal candidate for ACL reconstruction.

The undisputed facts do not show that no minimally competent professional would have treated Plaintiff's injury in the manner of Defendants. Defendants Ghosh, Carter, and Obaisi's Motion for Summary Judgment is granted as to Counts I-III.

*Count IV*

In Count IV, Plaintiff alleges that Hardy showed a willing and malicious intent of deliberate indifference to his health and safety. Specifically, Diggs alleges that Hardy knew about and facilitated, approved, condoned, or turned a blind eye to his inadequate medical treatment. Deliberate indifference occurs when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However,

> [i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno*, 414 F.3d at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

Plaintiff alleges that Hardy was aware of Plaintiff's medical condition due to conversations between the two and that Hardy referred Plaintiff to the health care unit. (*Id.*, ¶ 18.) Hardy does not recall having any conversations with Plaintiff regarding his injury or seeing Plaintiff use crutches. (*Id.*, ¶¶ 20-21.) It is undisputed that Hardy told Plaintiff to speak to the medical staff about Plaintiff's injury. Plaintiff argues that there is a triable issue of fact as

10

to whether Hardy ignored his grievance. As stated above, Plaintiff is unsure if Hardy saw the grievance, and Hardy stated that he did not see Plaintiff's grievance before this litigation. (*Id.*, ¶¶ 32, 39.) Specifically, Plaintiff argues in his Statement of Additional Undisputed Material Facts that Hardy is required to personally review every grievance designated as an emergency. However, this is a legal conclusion, and "to the extent that a statement of fact contains a legal conclusion . . . such a fact is disregarded." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Plaintiff has offered no facts to show that he informed Hardy that he was being mistreated, other than conversations in which Plaintiff told Hardy that he was waiting on surgery.

For Hardy to be liable for the conduct of the doctors, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye . . . ." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Plaintiff has not provided facts showing Hardy had any knowledge that Plaintiff was not being treated for his injury or was being mistreated by medical staff. Defendant Hardy's Motion for Summary Judgment is granted as to Count IV.

*Count V*

In Count V[3], Plaintiff alleges intentional infliction of emotional distress against Ghosh, Carter, Obaisi, and Hardy. Intentional infliction of emotional distress requires "that the defendant's conduct was extreme and outrageous, the defendant knew it was highly probable that her conduct would cause the plaintiff severe emotional distress, and the conduct did in fact cause the plaintiff severe emotional distress." *Williams v. Erickson*, 962 F. Supp. 2d 1038, 1043 (N.D. Ill. 2013) (citing *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010)). Extreme and dangerous

---

[3] This issue is numbered as Count VI in the Second Amended Complaint; however, it is the fifth count.

conduct goes "beyond all bounds of decency and [is] considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

As with Counts I-III, Defendants first argue that the statute of limitations has passed for Plaintiff's intentional infliction of emotional distress claims against Ghosh and Carter. Claims for intentional infliction of emotional distress have a two-year limitations period. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003) (citing 735 Ill. Comp. Stat. 5/13–202). The Prison Litigation Reform Act ("PLRA") provides that a prisoner must exhaust administrative remedies before filing suit under "section 1983 of this title, or any other Federal law." 42 U.S.C.A. § 1997e. As discussed above, Illinois has a two year statute of limitations for intentional infliction of emotional distress claims. Unlike Plaintiff's Eighth Amendment claim, his claim for intentional infliction of emotional distress does not require exhaustion. *See Torres v. Corr. Corp. of Am.*, 372 F. Supp. 2d 1258, 1263 (N.D. Okla. 2005) (holding state law claim of negligence does not require exhaustion); *Johnson v. Rivera*, No. 98 C 3907, 2002 WL 31012161, at *3 (N.D. Ill. Sept. 6, 2002) (holding statute of limitations on state-law claims was not tolled by PLRA exhaustion requirement). The intentional infliction of emotional distress claims are barred by the statute of limitations as to Ghosh and Carter, as well as on the following bases.

In determining whether conduct is extreme and dangerous, courts consider three main factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme"; (2) "whether the defendant reasonably believed its objective was legitimate"; and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Awalt v. Marketti*, 74 F. Supp. 3d 909, 941 (N.D. Ill.) *supplemented*, 75 F. Supp. 3d 777 (N.D. Ill. 2014) (quoting *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003)). Defendants had

12

power and control over Plaintiff's medical care, and Defendants were aware that Plaintiff was diagnosed with depression in 2004. Defendants argue that some treatment was provided indicates their conduct was not extreme and outrageous. *See Hardy v. Hardy*, No. 10 C 5921, 2013 WL 5325077, at *6 (N.D. Ill. Sept. 20, 2013) (holding that some treatment and a lack of evidence showing personal dislike or animus precluded plaintiff's intentional infliction of emotional distress claim).

Ghosh prescribed various permits for Plaintiff, ordered an MRI, referred Plaintiff to Mejia, the orthopedic specialist, and requested authorization for ACL surgery from Wexford. In their lone interaction, Carter renewed Plaintiff's existing medical permits for "low bunk, low gallery," waist chain, state boots, and a knee brace. During Obaisi's tenure as Medical Director, Obiasi submitted requests for orthopedic follow-ups, brought Plaitniff's case up during collegial review several times, and prescribed more physical therapy, as well as continuation of Plaintiff's various permits. Defendant Doctors' actions did not go beyond all bounds of decency so as to be considered intolerable in a civilized community. Defendants Ghosh, Carter, and Obaisi's Motion for Summary Judgment is granted as to Count V.

Hardy argues that this claim is barred on the additional grounds of sovereign immunity. "Under Illinois law, a claim against individual officers will be considered a claim against the state, even when . . . the officials are sued in their individual capacities, if 'judgment for the plaintiff could operate to control the actions of the State or subject it to liability.'" *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (citing *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992); *Feldman v. Ho*, 171 F.3d 494, 498 (7th Cir. 1999)). An agent's conduct is attributed to the state for purposes of sovereign immunity when: "'(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the

13

duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) . . . the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" *Id.* (quoting *Healy v. Vaupel*, 549 N.E.2d 1240 (Ill. 1990)).

The "officer suit" exception provides that "when an officer of the State commits an unconstitutional act or violates a statute, the suit is not against the State, because the State is presumed not to violate its own constitution or enactments." *Turpin v. Koropchak*, 567 F.3d 880, 884 (7th Cir. 2009). However, this exception only applies to state torts when those claims are dependent on the constitutional violation. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Plaintiff alleges that the denial of proper medical care was the extreme and dangerous conduct which caused his extreme emotional distress. Therefore, "the state-law claims at issue are dependent on the alleged constitutional violation" and are not covered under sovereign immunity. *Liebich v. Hardy*, No. 11 C 5624, 2013 WL 4476132, at *11 (N.D. Ill. Aug. 19, 2013). Nevertheless, as discussed above, Hardy was not deliberately indifferent to Plaintiff's medical needs; therefor, his intentional infliction of emotional distress claim against Hardy must also fail. Defendant Hardy's Motion for Summary Judgment is granted as to Count V.

## CONCLUSION

Defendant Hardy's Motion for Summary Judgment [65] and Defendants Ghosh, Carter, and Obaisi's Motion for Summary Judgment [69] are granted. Judgment is entered in Defendants' favor, and the civil case is closed.

Date:    January 14, 2016                                                  
JOHN W. DARRAH
United States District Court Judge